UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

BAHIA PARK, S.E.

    Plaintiff

        v.                  CIVIL NO.  98-1940 (JAG)

UNITED STATES OF AMERICA, et al.

    Defendants

---

## OPINION AND ORDER

GARCIA-GREGORY, D.J.

Pending before the Court are the parties' cross-motions for summary judgment, as well as their opposition and reply briefs. (Docket Nos. 29, 36, 40, 49.)  The question for review is whether the United States Army Corps of Engineers' (the "Corps") decision to deny a permit application submitted by plaintiff Bahía Park, S.E. ("Bahía Park") for the proposed development of a medium-income apartment project in Cataño, Puerto Rico, was arbitrary and capricious.  The Corps concluded, pursuant to the Clean Water Act ("CWA"), 33 U.S.C. § 1311(a), that the proposed development was not dependent on access to water, that alternatives to the proposed site therefore existed, and that Bahía Park failed to demonstrate clearly that there were practicable alternatives to

1

the proposed project site.  On November 30, 2001, the Court heard

oral arguments on the motions.  The Court has reviewed the

record, as well as the parties' thoughtful and thorough

submissions.  It concludes that the Corps's decision to deny the

permit application was not arbitrary and capricious.

Accordingly, the Court grants defendants's summary judgment

motion and denies Bahía Park's cross-motion.

## FACTUAL BACKGROUND[1]

Bahia Park, S.E., owns a parcel of land of approximately

13.4 acres located in the Palmas Ward of Cataño, Puerto Rico. A

portion of this parcel is located within an area known as "La

Cienaga de Las Cucharillas" ("Las Cucharillas"). Las Cucharillas

is a 2,900 acres herbaceous and forested marsh that remains one

of the largest wetland in the area of San Juan Bay. The EPA has

designated the marsh as an "aquatic resource of national

importance" and it has been placed on the Priority Wetlands List

for Puerto Rico. The marsh is surrounded by a number of

commercial and residential projects.

In 1996, Bahia Park began the construction of a 300-unit,

---

[1] The factual background has been culled from the parties'
motions for summary judgment, where they are referenced to the
case record.

middle-income, walk-up residential project on said parcel of
land. On February 6, 1996, the Corps issued a cease and desist
order to Bahia Park on the grounds that Bahia Park had filled 0.3
acres of wetland on the project site. Bahia Park thereafter
submitted a proposed jurisdictional determination (J.D.) to the
Corps on February 13, 1996. On March 12, 1996, the Corps reviewed
and verified in the field the information submitted by Bahia
Park. On March 26, 1996, the Corps accepted the determination,
subject to two modifications following the field inspection.

Prior to the 1996 jurisdictional determination by the Corps,
there were two previous jurisdictional determinations regarding
Bahia Park's property in that area. The 1992 J.D. indicated that
wetlands existed on a smaller area than that shown in Bahia
Park's 1996 proposed J.D. and the Corps' 1996 approved J.D. The
1992 J.D. by its terms expired after three years, and in July
1995 the Puerto Rico Planning Board had advised that the 1992
J.D. was under-inclusive.

In March of 1996, Bahia Park filed an after-the-fact
application with the Corps to allow for the 0.3 acres already
filled, and identifying the project and its objectives. The
application conceded that the proposed work would include the
discharge of fill material onto seven acres of marshland, and

also stated that there were no practicable alternatives. The
Corps sought public comment on the application, and the EPA, the
United States Fish and Wildlife Service, and the Conservation
Trust of Puerto Rico all recommended denial of the permit
application for a variety of reasons. The Corps gave Bahia Park a
summary of the comments, and advised them that the proposed
project might not comply with the Clean Water Act Section
404(b)(1) Permit Program Guidelines. In addition, Bahia Park was
given an opportunity to respond, which they did on July 16, 1996.

Thereafter, the Corps continued to gather and assess
information. Bahia Park responded to the relevant information as
requested by the Corps, including the identification of two
alternative sites that came to be known as "Alternate Site 1" and
"Alternate Site 2".

Subsequently, the Corps denied the permit application for
several reasons. The Corps found that the proposed project was
not water-dependent, that Alternate Site 1 had not been
demonstrated to be a non-practicable alternative site, and that
Bahia Park had failed to describe any search for alternative
sites beyond those it had already disclosed.

Bahia Park subsequently challenged the Corps' decision
through the present action, and alleges that the denial of the

4

permit application was arbitrary and capricious.

## STATUTORY AND REGULATORY BACKGROUND

Congress enacted the CWA "to restore and maintain the chemical, physical, and biological integrity of the Nation's waters."  33 U.S.C § 1251(a); see also 40 C.F.R. § 230.1. Section 301 of the CWA makes the discharge of pollutants into navigable waters unlawful, unless such discharge is authorized by permit.  See 33 U.S.C. § 1311(a).  The Corps issues such permits under section 404 of the CWA.  Town of Norfolk v. U.S. Army Corps of Engineers, 968 F.2d 1428, 1445 (1st Cir. 1992).

The term "pollutants" is defined broadly and includes dredged or fill material.  The term "navigable waters" is similarly all encompassing, covering all "waters of the United States."  Id.  Wetlands are included in the definition of "waters of the United States."  40 C.F.R. § 230.3(s)(7); see also United States v. Riverside Bayview Homes, Inc., 474 U.S. 121 (1985). Wetlands are defined to include "areas that are inundated or saturated by surface or ground water at a frequency and duration sufficient to support, and that under normal circumstances do support, a prevalence of vegetation typically adapted for life in saturated soil conditions."  33 C.F.R. § 328.3(b).

Section 404 of the CWA authorizes the Corps to issue or deny

5

permits for the discharge of dredged or fill material.  <u>See</u> 33

U.S.C. § 1344(a).

## STANDARD OF REVIEW

Rule 56(c) of the Federal Rules of Civil Procedure, sets

forth the standard for ruling on summary judgment motions:  The

judgment sought shall be rendered forthwith if the pleadings,

depositions, answers to interrogatories, and admissions on file,

together with the affidavits, if any, show that there is no

genuine issue of material fact and that the moving party is

entitled to a judgment as a matter of law.  Fed. R. Civ. P.

56(c).  The critical question is whether a genuine issue of

material fact exists.  A genuine issue exists if there is

sufficient evidence supporting the claimed factual dispute to

require a choice between the parties' differing versions of the

truth at trial.  <u>Morris v. Government Dev. Bank of Puerto Rico</u>,

27 F.3d 746, 748 (1st Cir. 1994); <u>LeBlanc v. Great Am. Ins. Co.</u>,

6 F.3d 836, 841 (1st Cir. 1993), <u>cert. denied</u>, 511 U.S. 1018

(1994). A fact is material if it might affect the outcome of the

suit under the governing law.  <u>Morrisey v. Boston Five Cents Sav.</u>

<u>Bank</u>, 54 F.3d 27, 31 (1st Cir. 1995); <u>Maldonando Denis v.</u>

<u>Castillo-Rodríguez</u>, 23 F.3d 576, 581 (1st Cir. 1994).  On a

motion for summary judgment, the court must view all evidence and

related inferences in the light most favorable to the nonmoving

party.  See Springfield Terminal Ry. v. Canadian Pac. Ltd., 133

F.3d 103, 106 (1st Cir. 1997).  Nonetheless, the court is free to

"ignore 'conclusory allegations, improbable inferences and

unsupported speculation. '" Suárez v. Pueblo International, Inc.,

229 F.3d 49, 53 (1st Cir. 2000) (citing Medina-Muñoz v. R.J.

Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990)).

Summary judgment is particularly appropriate in cases when

an agency's decision is based on an administrative record.  See,

e.g., Preserve Endangered Areas of Cobb's History v. United

States Army Corps of Engineers, 87 F.3d 1242, 1246 (11th Cir.

1996)("The fact finding capacity of the District Court is ...

typically unnecessary [in review of agency action] ... . The

court is to decide, on the basis of the record the agency

provides, whether the action passes muster under the appropriate

APA standard of review.")See, Camp v. Pitts, 411 U.S. 138, 142

(U.S., 1973)("In applying that standard, the focal point for

judicial review should be the administrative record already in

existence, not some new record made initially in the reviewing

court.")

The CWA does not articulate its own standard of review.

Therefore, the appropriate scope of review for CWA claims

[*actions challenging agency action*] is the standard set forth in
the Administrative Procedure Act.  5 U.S.C. § 706(2)(A); <u>Town of
Norfolk v. U.S. Army Corps of Engineers</u>, 968 F.2d 1438, 1445 (1st
Cir. 1992).  Under that section, the reviewing Court shall hold
unlawful and set aside agency action found to be "arbitrary,
capricious, an abuse of discretion, or otherwise not in
accordance with law."  5 U.S.C. § 706(2)(A); <u>Airport Impact
Relief, Inc. v. Wykle</u>, 192 F.3d 197, 202 (1st Cir. 1999).  The
task of a court reviewing agency action under the APA's
"arbitrary and capricious" standard, 5 U.S.C. § 706(2)(A), is "to
determine whether the [agency] has *considered the relevant
factors* and *articulated a rational connection* between the facts
found and the choice made."  <u>Dubois v. United States Dept. of
Agriculture</u>, 102 F.3d 1273, 1284 (1st Cir. 1996)(<u>quoting
Baltimore Gas & Elec. Co. v. Natural Resources Defense Council,
Inc.</u>, 462 U.S. 87, 97 (1983))(emphasis in original); <u>see also
Airport Impact Relief, Inc.</u>, 192 F.3d at 202; <u>Penobscot Air
Servs. Ltd. v. Federal Aviation Admin.</u>, 164 F.3d 713, 719 (1st
Cir. 1999)).  The Court must determine whether the Corps's
decision was based on a consideration of the relevant factors and
whether the Corps made a clear error of judgment.  <u>Id.</u> (<u>citing</u>

8

Marsh v. Oregon Natural Res. Council, 490 U.S. 360, 375 (1989)).

"While this is a highly deferential standard of review, it is not a rubber stamp." Dubois, 102 F.3d at 1285 (quoting Citizens Awareness Network, Inc. v. U.S. Nuclear Regulatory Comm'n, 59 F.3d 284, 290 (1st Cir. 1995). Although "the ultimate standard of review is a narrow one," the Court must undertake a "thorough, probing, in-depth review" and a "searching and careful" inquiry into the record. Id. (quoting Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 415-17 (1971)). The Court may not set aside the Corps's administrative decision, however, "simply because [it] is unhappy with the result reached." Id. at 1284.

## DISCUSSION

Bahia Park claims that the Corps' denial of the permit application is arbitrary and capricious for the reasons that follow: (1) that the aerial photograph that was the basis for the Corps' jurisdictional determination was outdated and inaccurate, (2) that the practicable alternative sites analysis was incorrectly applied, and (3) that the Corps' denial violates 33 C.F.R. 320.4(j). This Court will address each of those issues in turn.

I.   The Corps Jurisdictional Determination

9

Bahia Park is contesting the basis for the Corps'
jurisdictional determination of 1996, pointing to the Corps' use
of a 1985 aerial photograph as proof of the J.D.'s arbitrary and
capricious nature. In its argument, Bahia Park points to the
Corps' 1992 J.D. and its variation from the 1996 J.D., and claims
that a 1985 aerial photograph would only yield inaccurate
information.

It is evident from the record, however, that the 1996 J.D.
was not based solely on the 1985 aerial photograph. On March 12,
2003, prior to their use of the aerial photograph as an aid in
determining the boundaries at issue, the Corps performed an on-
site inspection of the area. A.R. File 1, Doc. 17. The consultant
submitted his own photographs noting, among other things, that
there was a "large (6-7 acres) herbaceous wetland, located in the
center of the property". A.R. File 1, Doc. 17. This site
inspection led to a further revision of the wetland boundaries,
and it was for that purpose that the 1985 aerial photograph was
utilized. A.R. File 1, Doc. 17.

Therefore, it appears from the record that the Corps relied
on more than just the 1985 aerial photograph to reach its
determination. The mere fact that the photograph at issue was
from 1985 does not immediately put into question its capacity to

provide the pertinent information being sought, particularly if
it is one of several tools being utilized in reaching a
determination.

This Court, therefore, sees no reason to deny the deference
due to the Corps in matters of how to conduct a technical
examination to establish a jurisdictional determination, and
finds Bahia Park's first argument to be without merit.

II.  The Practicable Alternative Sites Analysis

Bahia Park's second argument is that the practicable
alternative sites analysis was incorrectly applied by the Corps
in order to deny its permit application. In essence, Bahia Park
objects to the Corps' finding that the Alternative Site 1 was
practicable because: (1) existing access to the area is limited
and/or poor, (2) the area's location makes it unsuitable for
middle-income housing, and (3) the Corps arbitrarily refused
Bahia Park's mitigation proposal.

Bahia Park's first argument as to the accessability of
Alternative Site 1 hinges on the issue of potential cost-increase
of the project in order to provide suitable accessibility. The
Corps found that the site offered the following alternatives to
improve accessibility: (1) access would be either through PR-869,
through the Palmas Boulevard extension, or through a bridge over

11

an existing wetland. In both of its briefs, Bahia Park reiterates the high-cost involved in the options presented by the Corps to ameliorate the issue of road access and access to other neighborhoods. This is insufficient to defeat the premise that Alternative Site 1 is a practicable alternative, and this Court finds that Bahia park did not meet its burden of a clear showing to the contrary.

The second argument put forth by Bahia Park is that the first alternative site is not suitable for middle-income housing because of its poor location in terms of its distance from other more upscale neighborhoods and its proximity to the North Distribution warehouse area. Although the area may not be as ideal as the original site, none of the objections raised by Bahia Park make the site impracticable. The fact that Bahia Park's own expert found the site suitable for low-income housing means that, as it stands, it is a suitable site for residential purposes. Therefore, Bahia Park's proposed changes to the area would enhance its value for purposes of a middle-income housing project, but they are not essential to make the site suitable for residential purposes. A.R. File 2, Doc. 20. In addition, this Court finds that the Corps has made a reasonable showing that there are several alternatives available to Bahia Park in order

12

to make the desired changes, and that the cost of said alternatives may reduce Bahia Park's profit, but certainly do not render it a prohibitive endeavor.

Bahia Park's final argument is that the Corps refusal to consider its mitigation proposal as part of its practicable alternatives was arbitrary and capricious. At issue is the Corps' interpretation of guideline 404(b)(1) and of existing case law as to its interpretation. It is well established that deference is to be given to an agency's application of its own statutes. See Johnson v. United States Army Corps of Engineers, 6 F.Supp.2d 1105, 1110 (8th Cir. 1998) (citing Wildlife Federation v. Whistler, 27 F.3d 1341, 1344 (8th Cir. 1994). The Corps position is that, *if practicable alternatives do not exist*, then a permit may be granted if (1) there is a determination that the proposed project's impact can be minimized, and (2) once there has been an evaluation of minimization, whether remaining impacts can be mitigated.

Bahia Park puts forth a different argument claiming that, in light of the lack of practicable alternatives, there is no reasonable explanation for the Corps' refusal to accept its mitigation plan. Although Bahia Park offers several cases to bolster its argument, this Court finds Bahia Park's creative

13

reading of existing case law unpersuasive and distinguishable from the present controversy. More importantly, Bahia Park's argument rests on the false premise that there were no practicable alternatives, when the Corps' position all along has been that Bahia Park was unsuccessful in demonstrating a lack of practicable alternatives.

While it is apparent that the parties in this case are of differing opinions, the Corps' contentions as to the possible suitability of Alternative Site 1 seem reasonable and supported by the evidence on record.[2] Moreover, it is this Court's role to examine, in light of the evidence submitted on record, whether the Corps' decision was deficient, not whether it was correct. *See* Hall v. Sec'y of Army, 259 F.Supp.2d 939, 940 (8th Cir 2003)(citing Henry v. United States Dep't of Navy, 77 F.3d 271, 272-3 (8th Cir. 1996).

III. Permit Denial under 33 C.F.R. § 320.4(j)

Finally, Bahia Park contends that the Corps permit denial is contrary to 33 C.F.R. § 320.4(j) of the Corps regulations. In pertinent part, said regulation states: "in the absence of

---

[2] This Court will not delve into an examination of Alternative Site 2, as it finds that Bahia Park's objections to Alternative Site 1 were unavailing.

14

overriding national factors of the public interest that may be revealed during the evaluation of the permit application, a permit will generally be issued following receipt of a favorable state determination provided the concerns, policies, goals and requirements expressed in 33 C.F.R. parts 320-324 and the applicable statutes have been considered and followed...", 33 C.F.R. § 320.4(j). Bahia Park's argument seems to be that, because it had the necessary state approvals for the proposed project, the Corps ultimate denial of the permit application was arbitrary and capricious.

This Court finds that Bahia Park's interpretation of the regulation defies logic, for the regulation plainly states that it "will generally be issued" **provided that** "the concerns, policies, goals and requirements expressed in 33 C.F.R. parts 320-324 and the applicable statutes have been considered and followed". To posit that issuance of state permits guarantees the issuance of the Corps' permit would serve to render the agency irrelevant and would annul its independent criteria. This Court, once more, defers to the Corps interpretation of its own regulations, and finds that the Corps decision is both reasonable and well substantiated by the existing record.

## CONCLUSION

15

For the reasons discussed above, this Court finds that the Corps made a reasonable determination, substantiated by the evidence on record, that the permit application *did not* meet the requisite standards because it did not make a clear showing that there were no practicable alternatives. Therefore, the Court concludes that the Corps's decision to deny the permit application was not arbitrary and capricious. Accordingly, the Court **GRANTS** defendants's summary judgment motion and **DENIES** Bahía Park's cross-motion. Judgment will be entered accordingly.

IT IS SO ORDERED.

San Juan, Puerto Rico, this 30th day of September, 2003.

JAY A. GARCIA GREGORY
United States District Judge